UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEBORAH BROWN,

Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　2:09CV266

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Deborah Brown ("Brown or "plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. By order filed August 6, 2009, this action was referred to a United States Magistrate Judge[1] pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be VACATED and REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

---

[1]The Order of Referral designated United States Magistrate Judge James E. Bradberry who retired effective January 31, 2010. This Report and Recommendation was prepared by Judge Bradberry's duly appointed successor, United States Magistrate Judge Douglas E. Miller, who was appointed effective February 1, 2010.

# I. PROCEDURAL BACKGROUND

On January 9, 2007, Brown filed an application for DIB and SSI, alleging disability beginning August 3, 1995, due to lower back trauma, a herniated disc, and left wrist and ankle injuries. (R. 114-29). The Commissioner denied her application initially (R. 67-76), and upon reconsideration, (R. 90-101). Brown made a timely request for an administrative hearing, (R. 102), which was conducted September 3, 2008, (R. 13).

On September 18, 2008, Administrative Law Judge ("ALJ") Irving A. Pianin found that plaintiff was not disabled within the meaning of the Social Security Act, and denied her claim for DIB and SSI. (R. 13-21). On April 17, 2009, the Appeals Council denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), on June 3, 2009, Brown filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

# II. FACTUAL BACKGROUND

Brown was born on December 5, 1958, and was thirty-seven years old at the time of the alleged onset of disability, and was therefore considered a "younger individual" pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c) (2009). (R. 19). Brown testified that she is 5'4" and weighs 220 pounds. (R. 48-49). She has a high school education and completed one year of college. (R. 236). She has been employed as an assembly line worker; her last job was from July to December 2006. (R. 49-50). Brown also previously worked as dump truck driver. (R. 61).

On December 7, 1995, Brown had a laminectomy at L4-5. (R. 16). She was prescribed a TENS unit and, in either 1996 or 1997, she received lumbar injections at the "trigger

points." (R. 56). On June 9, 2003, she injured her left ankle when she tripped and fell on a concrete surface. (R. 52). Doctors later determined that she sustained a left trimalleolar ankle fracture. (R. 216-17). Initially, plaintiff was placed in a padded, short-legged cast, and was ordered "non-weightbearing." (R. 212-17). She progressed from the cast to an aircast boot to a velcro aircast support. (R. 208-17). By August 2003, plaintiff was permitted to be weightbearing. (R. 211). In September 2003, she was permitted to begin formal physical therapy. (R. 210). By March 2004, her ankle fracture was completely healed, although she had some residual swelling. (R. 208).

Since May 2003, Brown has been under the care of Donald Mingione, M.D. of Churchland Psychiatric Associates, P.C. (R. 258). The record contains a number of Dr. Mingione's "Pain Management Progress Notes" covering the period from June 2005 through July 2008. (R. 218-33, 249-57). Throughout the notes, Brown complains of chronic pain and her inability to work. She described numbness in her legs and an inability to stand. The records reveal regular discussion about Brown's need to consult with an orthopaedist, but there are no notes from a treating orthopaedic specialist. Dr. Mingione's notes indicate that she was prescribed Methadone, Valium, Naprosyn, Lasix, Flexeril, and Prilosec. (R. 218-33, 249-57).

At the hearing, Brown testified that the medications have side effects. Specifically, that the Flexeril "completely knocks [her] out," that she has a tendency to become drowsy, suffer headaches, and becomes "cross-eyed." (R. 54). According to Brown, she is unable to do much work around the house, she cannot carry more than a few pounds, has trouble sitting for more than ten or fifteen minutes or standing for more than ten minutes, and cannot walk for distances greater than half a block. (R. 55-56).

On August 1, 2007, Timothy N. Lee, M.D. performed a consultative examination of Brown. (R. 235-41). Her gait, posture, and station were normal. She was able to walk without an assistive device. She also was able to get on and off the examination table and dress and undress herself without assistance. She had normal range of motion in her upper extremities, normal finger and hand dexterity and coordination, and maximum bilateral grip strength. She had full range of motion in her back, and a post surgical scar in the lower lumbar region was well healed. Straight-leg raising was negative in both the lying and sitting positions. Although she had some tenderness to palpation in the lower lumbar region, there were no spasms. (R. 236). Despite some mild tenderness and swelling in the lateral aspects of the left ankle, plaintiff had full weight bearing and range of motion. (R. 236-37). X-rays of the left ankle showed a healed distal fibula fracture. (R. 237, 240). Dr. Lee also reviewed x-rays of the lumbar spine showed moderately severe degenerative changes at L4-5 and L5-S1. (R. 237, 241).

Based on his exam and review of the x-rays, Dr. Lee indicated that lifting, pulling, and pushing should be limited to ten to fifteen pounds on an occasional basis; Brown should avoid repetitive bending, twisting, and lifting; she can stand and walk at least ten to fifteen minutes at a time followed by ten to fifteen minutes of rest, correlating to approximately four hours in a typical eight-hour workday. Dr. Lee noted no significant visual, communicative or sitting limitations. (R. 237).

On August 30, 2007, Leopold Moreno, M.D., a non-examining consultant, completed a residual functional capacity ("RFC") assessment on Brown. (R. 242-47). Dr. Moreno reviewed the medical records including Dr. Lee's report. Dr. Moreno disagreed with the limitations placed on Brown by Dr. Lee. (R. 247). Dr. Moreno assessed that Brown has the RFC to lift twenty pounds

occasionally and ten pounds frequently; stand and/or walk for at least two hours, and sit for about six hours, in an eight-hour workday; and push and pull with no additional limitations. (R. 243). Dr. Moreno further assessed that Brown was limited to no more than occasional climbing, stooping, kneeling, crouching, and crawling. (R. 244). He concluded she could not perform strenuous work but could perform lighter work. (R. 247).

On August 6, 2008, Brown's treating physician, Dr. Mingione, completed a RFC assessment on Brown. (R. 258-62). Dr. Mingione identified that plaintiff suffered from chronic low back pain, as a result of her status, post laminectomy. (R. 258). Dr. Mingione opined that she can rarely lift less than ten pounds and never lift twenty pounds; experiences frequent interference with attention and concentration due to severe pain; can sit and stand for no more than twenty minutes at a time; sit for only two hours in an eight-hour workday; must shift positions at will and take unscheduled breaks during an eight-hour workday; and is significantly limited in a number of postural movements. (R. 259-61). Dr. Mingione opined there are no side effects of Brown's medications which would interfere with her ability to effectively perform in the work setting, but also stated that the degree of her pain would cause frequent interruptions in concentration and prevent her from focusing on the task at hand. Because of this, there would likely be days when Brown would be unable to work. (R. 262).

Robert Edwards was called to testify as an impartial vocational expert (VE). Edwards classified Brown's past relevant work as an assembly line worker as light, unskilled work, and her past relevant work as a dump truck driver as medium, unskilled work. (R. 62). In response to a hypothetical framed by the ALJ, Edwards testified that an individual with Brown's age, education, and work experience who was limited to light work with an opportunity to alternate

sitting and standing at will, and who could perform no more than occasional postural activities could not perform Brown's past relevant work. (R. 62). Edwards further testified that an individual described in the hypothetical could perform a significant number of light jobs in the local and national economies such as cashier (825 locally/165,000 nationally), office helper (1,350 locally/265,000 nationally), and information clerk (740 locally/152,000 nationally). (R. 63).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the

---

[2] "The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C. § 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous

7

work or any other substantial gainful activity that exists in the national economy.³ 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden

---

³The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.  ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) Brown has not engaged in substantial gainful activity for more than a twelve-month period after August 3, 1995 (the alleged onset date of disability)[4]; (2) she has severe impairments of back disorder, obesity, and s/p ankle fracture[5]; (3) her impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Brown is unable to perform past relevant work, but has the RFC to perform light work that permits her to adjust her position between sitting and standing at will and does not involve more than occasional postural function; and (5) there are jobs that exist in significant numbers in the national economy that Brown can perform. (R. 13-21).

---

[4]The ALJ noted that the plaintiff had substantial employment of brief duration after the alleged onset date but curtailed any analysis of an appropriate onset date due to his finding that Brown was not disabled.

[5]The ALJ further addressed Brown's alleged wrist impairment and found that "there is no evidence of pain or other symptoms attributed to her wrist and no evidence of medically determined wrist impairment." (R. 16).

In her motion for summary judgment, Brown alleges the following specific errors: (1) the ALJ failed to indicate what weight, if any, was accorded to each medical opinion; (2) the ALJ failed to give "controlling weight" to the opinion of Brown's treating physician; (3) the ALJ failed to give "controlling weight" to the opinion of the examining consultant; and (4) the record establishes that Brown cannot perform any work on a full-time basis. For the reasons set forth below, the Court agrees that the ALJ failed to adequately explain the weight given to the medical opinions.

**B.  The ALJ did not adequately explain the weight assigned to medical opinions and the Commissioner's decision to deny benefits should be vacated and the case remanded for further proceedings**

At step four of the sequential analysis, the ALJ must first determine the claimant's RFC, which is the claimant's maximum ability to work despite her limitations. 20 C.F.R. §§ 404.1545(a) and 416.945(a)(1). The ALJ then uses that RFC to determine whether the claimant can perform her past relevant work. Id. at § 416.945(a)(5)(i). The determination of RFC is based on consideration of all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(1).[6]

In the present case, the ALJ found that Brown has the RFC to perform light work, which permits her to adjust her position between sitting and standing at will and does not involve more than occasional postural function. (R. 17). In doing so, the ALJ essentially rejected the

---

[6]"Other evidence" includes statements or reports from the claimant, the claimant's treating or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

10

medical opinions of plaintiff's treating physician, Dr. Mingione, and an examining consultant, Dr. Lee, and adopted a third assessment completed by a non-examining consultant, Dr. Moreno.

Brown asserts that the ALJ's evaluation of these medical source opinions is not supported by substantial evidence and alleges several errors in the ALJ's determination of her RFC. Brown first contends that the ALJ erred by failing to properly explain the weight accorded to each medical opinion. Second, she argues the ALJ failed to sufficiently explain his decision to not give controlling weight to the opinions of Dr. Mingione and Dr. Lee. In response, the Commissioner contends that the ALJ accorded appropriate weight to both opinions.

In making the RFC determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. 20 C.F.R. § 416.927(d)(1). Under the federal regulations and Fourth Circuit caselaw, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(d)(2) and 1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

However,

> a finding that a treating physician's opinion is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.

11

SSR 96-2P, 1996 WL 374188, at *4 (S.S.A.). The regulations require the ALJ to evaluate every medical opinion. Accordingly, even if a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations.]" Id. at *5. Those factors are: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. Id. at §§ 416.927(d)(2)-(6) and 404.1527(d).

The ALJ must articulate "good reasons" for his decision as to the weight accorded to the opinion of a treating physician. 20 C.F.R. § 416.927(d)(2).[7] Therefore, when the ALJ's decision is not fully favorable to the claimant, the decision must contain

> specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.). This specificity requirement is necessary because the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the records as a whole to determine whether the conclusions reached are rational."

---

[7] In fact, under the applicable regulations, the ALJ is required to "explain" in his decision the weight accorded to all opinions--treating sources, nontreating sources, State agency consultants, and other nonexamining sources. 20 C.F.R. § 416.927(f)(2)(ii).

Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). If the ALJ does not "explicitly" indicate the weight accorded to all the relevant evidence, the reviewing court is unable to determine if the ALJ's findings are supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

In the present case, the ALJ states that he carefully considered the entire record, including the opinion evidence in accordance with the requirements of the applicable regulations and SSR's, (R. 17); however, merely stating that the record was properly considered does not in and of itself suffice. In fact, the ALJ's decision, which dwells on the ALJ's credibility concerns with Brown's testimony, is sparse in its discussion of the medical opinions. With regard to Dr. Mingione's opinion, the ALJ recited the limitations identified by Dr. Mingione in his August 6, 2008 assessment, concluding that " if supported," they would produce a finding of "disabled." According to the ALJ, this assessment and the degree of limitation recommended is not substantiated by the record. Specifically, the ALJ found that Dr. Mingione

> provided no clinical support for these extreme limitations, as he noted only that [Brown] is s/p back surgery and has chronic pain. There are no radiological or clinical findings to support the identified limitations and no references in his numerous progress notes of [Brown's] appointments to support the extensive limitations identified.

(R. 19).

Having reviewed the ALJ's report and the reasons he articulated in that report, the Court finds that the ALJ's analysis of Dr. Mingione's opinion is insufficient to permit a proper review of his findings under the substantial evidence standard. First, the ALJ failed to articulate the weight accorded to Dr. Mingione's opinion. In stating that there were no clinical findings or

13

references in the progress notes to support the limitations identified by Dr. Mingione, the Court can infer that the ALJ did not accord controlling weight to that opinion and, in fact, rejected it. (R. 19).[8] The decision not to accord controlling weight to a treating physician's opinion does not necessarily mean that the opinion should be rejected. Instead, the ALJ must evaluate the opinion by applying the factors set forth in the regulations, and provide--with specificity--"good reasons" for his decision.

The ALJ's decision contains no discussion as to the weight assigned to Dr. Mingione's opinion, or the specific reasons for any decision regarding the weight assigned. The report also does not record whether, in evaluating Dr. Mingione's opinion, the ALJ considered the factors as required by the regulations. As a result, this Court is ill-equipped to apply the substantial evidence test to the ALJ's decision to discount (or perhaps disregard) the opinion of Brown's treating physician.

With regard to the opinion of Dr. Lee[9], the ALJ's decision includes slightly more discussion in that he accorded the opinion "little weight." (R. 19). The ALJ reviewed the results of Dr. Lee's physical examination of Brown and found that the limitations he identified were not consistent with his physical examination of her. According to the ALJ, Dr. Lee's limitations

---

[8]While not explicitly stated, it can be inferred that the ALJ found Dr. Mingione's assessment (and the limitations identified in the assessment) to be inconsistent with the assessment completed by Dr. Moreno, a nonexamining consultant. According to the ALJ, Dr. Moreno's findings are "consistent with the limited light [RFC] reached in this decision." (R. 18).

[9]Brown refers to Dr. Lee as a treating physician, although it appears that he only examined her once as part of a consultative examination. The Commissioner, however, does not seriously dispute the nature of the examining relationship, except to refer to Dr. Lee as a "one-time consultative examiner." Def.'s Mot. at 9. The parties agree Dr. Moreno reviewed records only.

> are unsupported by the evidence considered in its entirety but more specifically are unsupported by the examination findings on which the opinion was based. As has been established, [Brown] had an essentially normal physical examination with no evidence of atrophy or motor loss.

(R. 19).

While the ALJ did provide additional detail with regard to the opinion of Dr. Lee, the report did not adequately address the factors used to determine the "little weight" assigned to his opinion. The ALJ also appeared to significantly discount radiological findings of "moderately severe degenerative changes" as well as Brown's prior laminectomy both of which provide clinical support for the restrictions recommended by Dr. Lee and Dr. Mingione. As stated above, the following factors must be considered in determining the weight accorded to any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors brought to the ALJ's attention. 20 C.F.R. §§ 416.927(d) and 404.1527(d). It cannot be said that the ALJ considered each of these factors and, as in the case of Dr. Mingione's opinion, the Court is unable to appropriately review the ALJ's decision.

The ALJ's decision to defer to the opinion of a non-examining medical consultant and discount the opinions of Brown's treating physicians requires consideration of several factors and a recitation of the reasons "why" the ALJ made the decision he did. On review, the Court is not permitted to infer reasons to support the ALJ's decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision.") Instead the appropriate remedy is to vacate denial of her claim and remand for further proceedings.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation. Specifically, the fact-finder must reevaluate the weight attributed to the physicians' opinions pursuant to Part IV, Section B of this Report and Recommendation. Brown has also challenged the ALJ's decision with regard to whether her limitations prevent her from performing full-time work. As this portion of the ALJ's decision is directly affected by the RFC determination and, consequently, evaluation of the medical opinions, the fact-finder must also reevaluate this determination on remand. As made necessary by findings made with respect to Brown's ability to perform work, the fact-finder may also need to make findings with respect to the date of onset of any disability which was not finally determined due to the ALJ's decision that Brown was not disabled.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
Douglas E. Miller
United States Magistrate Judge

Norfolk, Virginia
May 6, 2010

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

John H. Klein
Montagna Klein Cambden LLP
425 Monticello Ave.
Norfolk, VA 23510

Susan L. Watt
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

_____, 2010