IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JUN 1 4 2010
CLERK, US DISTRICT COURT
NORFOLK, VA

DEBORAH BROWN,

Plaintiff,

v.                                                          Civil Action No. 2:09cv266

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## ORDER

This case is an appeal of a decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Deborah Brown ("Plaintiff") disability, disability insurance benefits, and supplemental security income benefits under the Social Security Act. It comes before the Court upon the Report and Recommendation ("Magistrate's Report") of Magistrate Judge Douglas E. Miller regarding both the Plaintiff's and Defendant's Motions for Summary Judgment. Judge Miller recommended that the Commissioner's denial of benefits be vacated and the proceeding remanded to the Commissioner for further proceedings.

Defendant objects to Judge Miller's recommendation, and argues that the decision of the Administrative Law Judge is adequately supported by substantial evidence. Specifically, Defendant argues that Judge Miller erred in (i) finding that the Administrative Law Judge ("ALJ") did not adequately explain the weight assigned to the medical opinions in the record and (ii) finding that the ALJ did not adequately address the factors used to determine the weight

assigned to these opinions. For the reasons explained below, the Court hereby **ADOPTS** the findings in the Magistrate Judge's Report and **DENIES** the Defendant's Objections to the Report and Recommendation of the Magistrate Judge. Thus, the final decision of the Commissioner is hereby **VACATED** and **REMANDED** for further proceedings consistent with this Opinion and the Report and Recommendation.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on December 5, 1958. (R. at 19.) She was 49 years old at the time of the hearing, and she is presently 51. (See R. at 25, 53.) She lives with her sister, who works as an assistant principal. (R. at 48.) Plaintiff has a high school education, and completed a single year of college. (R. at 236 .) Her relevant work experience includes employment as an assembly line worker and as a dump truck driver. (R. at 49–50; 61.)

Plaintiff states that her most recent employment lasted from July 2006 to December 2006. (R. at 50.) During this time, she worked on an assembly line, where she powder-coated shelves for Wal-Mart stores. (R. at 49–50.) Plaintiff reports that she "did most of the jobs there except for the jobs that were too heavy for the women to do. . . . Lifting of boxes, cases." (R. at 49.) Plaintiff's longest stretch of employment lasted from 1992 to 2001, during which time she worked as a truck driver in the construction industry. (R. at 177.) Plaintiff "drove trucks to deliver construction material, dirt sand, gravel, and various objects to various job sites." (Id.)

Plaintiff alleges that she became disabled due to a back injury on August 3, 1995. (R. at 47.) On that date, she jumped down from a dump truck and landed in a shallow hole. (R. at 184.) On December 7, 1995, Plaintiff had a laminectomy at L4-5. (R. at 16.) She was given a TENS unit, and received trigger point injections at some point between 1996 and 1997. (R. at

56.) Despite her injury, Plaintiff was able to continue her work as a dump truck driver for several years. (R. at 177.)

On July 9, 2003, Plaintiff tripped while coming out of a doorway and fell on her ankle. (R. at 52.) She sustained a left trimalleolar ankle fracture. (R. at 216–17.) This injury was treated by casting, first in a padded short-legged cast and later in an aircast boot and a velcro aircast support. (R. at 208–17.) By August 27, 2003, Plaintiff had recovered sufficiently to use her ankle for weightbearing. (R. at 211.) She was permitted to begin formal physical therapy on September 16, 2003. (R. at 210.) By March 2004, her ankle fracture had completely healed, leaving only some residual swelling. (R. at 208.)

Shortly before injuring her ankle, Plaintiff began seeking care from Dr. Donald Mingione, M.D. of Churchland Psychiatric Associates, P.C. (R. at 258.) Treatment records are only available from June 2005 onwards. (R. at 218–33; 249–57.) These records consist of a number of Dr. Mingione's "Pain Management Progress Notes." Throughout these Notes, Plaintiff complains of chronic pain in her back and pain and swelling in her left ankle. (Id.) The Notes also indicate that Plaintiff suffered from numbness in her legs and pain in her right knee and ankle. (R. at 227, 257.) The Notes further indicate that Plaintiff left her job due to her health problems, and went through periods during which she was unable to work. (R. at 218–33; 249–57.) Dr. Mingione advised Plaintiff to obtain treatment from an orthopaedist, but there is no indication that Plaintiff followed this advice. (R. at 229--33.)

Dr. Mingione's notes indicate that Plaintiff was prescribed Methadone, Valium, Naprosyn, Lasix, Flexeril, and Prilosec. (R. at 218–33; 249-57.) At the hearing, Plaintiff testified that these medications have strong side effects on her. (R. at 54.) Specifically, Plaintiff

reports that Flexeril "completely knocks [her] out," and that she has a tendency to become drowsy, suffer headaches, and become "cross-eyed." (Id.). When asked about her functional capabilities, Plaintiff reports that she is unable to do much work around the house, cannot carry "but a few pounds at a time," is uncomfortable after sitting for more than ten to fifteen minutes, and cannot walk more than a half a block. (R. at 55.) Plaintiff reports that standing is an even bigger problem than walking, and that she cannot stand for more than ten minutes without leaning on something. (R. at 56.)

On March 26, 2007, Plaintiff filed an application for Supplemental Security Income ("SSI"). (R. at 114–20.) On that same date, Plaintiff submitted an application for a period of Disability and Disability Insurance Benefits ("DIB"). (R. at 123–129.) In both applications, Plaintiff indicated that her "disability began on August 3, 1995." (R. at 114; 123.)

On August 1, 2007, Dr. Timothy N. Lee, M.D., performed a Social Security Disability evaluation of Plaintiff. (R. at 236–241.) Plaintiff's gait, posture, and station were normal. (R. at 236.) She was able to walk, get on and off the examination table, and dress and undress herself without assistance. (Id.) Her upper extremities and hands showed a normal range of motion, coordination, and maximum bilateral grip strength. (Id.) An examination of her back also showed a normal range of motion. (Id.) Although Plaintiff had some tenderness to palpation in her lower lumbar region, there were no spasms. (Id.) Dr. Lee found some mild tenderness and swelling in the lateral aspects of Plaintiff's left ankle. Despite this swelling and tenderness, Plaintiff had full weight bearing and range of motion. (R. at 237.)

Dr. Lee took X-rays of Plaintiff's left ankle and her lumbar spine. The left ankle X-ray showed nonspecific soft tissue swelling and healed distal fibular fracture. (R. at 240.) The

lumbar spine X-ray showed moderately severe degenerative changes at L4-L5 and L5-S1 with Grade 1 spondylolisthesis L4 on LS level scoliosis. (R. at 241.)

Based on his examination and review of the X-rays, Dr. Lee indicated that lifting, pulling, and pushing should be limited to ten to fifteen pounds on an occasional basis; Plaintiff should avoid repetitive bending, twisting, and lifting; she can stand and walk at least ten to fifteen minutes at a time, followed by ten to fifteen minutes of rest. Dr. Lee noted no significant visual, communicative, or sitting limitations. (R. at 237.)

On August 30, 2007, Dr. Leopold Moreno, M.D., a non-examining consultant, completed a residual functional capacity ("RFC") assessment of Plaintiff. (R. at 242–47.) Dr. Moreno reviewed Plaintiff's medical records and Dr. Lee's report. Based on this review, Dr. Moreno expressed his disagreement with Dr. Lee's conclusions. Specifically, Dr. Moreno stated that "it is felt that [Dr. Lee] may have relied too heavily on the Claimant's allegations of what she can and cannot do. The exam was good. The Claimant should be able to lift at least 20 lb occasionally as this would be a routine weight lifted for many routine activities." (R. at 247.) Dr. Moreno further assessed that Plaintiff could stand and/or walk for at least two hours and sit for about six hours during an eight-hour work day. (R. 243.) Furthermore, although Dr. Moreno found that Plaintiff was limited to no more than occasional climbing, stooping, kneeling, crouching, and crawling, he stated that she could push and pull with no additional limitations. (Id.) In conclusion, Dr. Moreno stated that Plaintiff could not perform strenuous work, but could perform lighter work. (R. at 247.)

After reviewing these reports and Plaintiff's medical records, the Social Security Administration denied Plaintiff's application on August 30, 2007. (R. at 67–76.) Plaintiff filed a

request for reconsideration on October 22, 2007. (R. at 85.) Upon reconsideration, the Social Security Administration affirmed its initial decision on January 31, 2008. (R. at 41-43.) On March 8, 2008, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 102.) The hearing was scheduled for September 3, 2008. (R. at 419.)

On August 6, 2008, Dr. Mingione completed a RFC assessment on Plaintiff. (R. at 258-62.) Dr. Mingione indicated that Plaintiff's primary symptom is chronic pain in her lower back. (R. at 258.) In Dr. Mingione's opinion, Plaintiff can rarely lift more than ten pounds and can never lift more than twenty pounds, can sit and stand for no more than twenty minutes at a time, can sit for only two hours in an eight-hour workday, must shift positions at will and take unscheduled breaks during the workday, and is significantly limited in a number of postural movements. (R. at 259-61.) Additionally, Dr. Mingione opined that Plaintiff's pain would frequently interfere with the attention and concentration needed to perform even simple work tasks. (R. at 259.) Due to these symptoms, Plaintiff would be unable to work on some days. (R. at 262.)

The ALJ Hearing was conducted on September 3, 2008. (R. at 13.) Robert Edwards was called to testify as an impartial vocational expert. Edwards classified Plaintiff's relevant work experience as medium, unskilled work. (R. at 62.) Edwards testified that an individual with Plaintiff's age, education, and work experience who was limited to light work with an opportunity to alternate sitting and standing at will, and who could perform no more than occasional postural activities, could not perform Plaintiff's past relevant work. (R. at 62.) Edwards further testified that such an individual could perform a significant number of light jobs

in the local and national economies such as cashier, office helper, and information clerk. (R. at 63.)

On September 18, 2008, the ALJ issued a decision in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act, and thus was not entitled to SSI, DIB, or disability. (R. at 10-21.) The ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [Dr. Moreno's] residual functional capacity assessment." (R. at 18.) The ALJ specifically noted that Plaintiff "has worked successfully several times since her alleged date of disability onset including at an assembly line job that required standing." (Id.). With regard to Dr. Mingione's assessment of Plaintiff's capacity, the ALJ stated that Dr. Mingione "provided no clinical support for these extreme limitations, as he noted only that she is s/p back surgery and has chronic pain. There are no radiological or clinical findings to support the identified limitations and no references in his numerous progress notes of the claimant's appointments to support the extensive limitations identified." (R. at 19.) Similarly, the ALJ afforded Dr. Lee's findings "little weight, as they are unsupported by the examination findings on which the opinion was based. As has been established, the claimant had essentially normal physical examination with no evidence of atrophy or motor loss." (Id.)

On September 23, 2008, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Administration ("Appeals Council"). (R. at 9.) The Appeals Council denied Reed's request for review on April 17, 2009. (R. at 1.)

Plaintiff brought this action seeking judicial review of the Commissioner's decision to deny her claim for DIB under 42 U.S.C. § 405(g) and 5 U.S.C. § 706. Defendant answered, and

7

this action was referred to Magistrate Judge Douglas E. Miller. Plaintiff filed a motion for summary judgment with a memorandum in support, and Defendant filed a motion for summary judgment with a memorandum in support and in opposition to Plaintiff's motion for summary judgment. Plaintiff did not file a response to Defendant's motion for summary judgment, and filed a Reply in support of her own motion for summary judgment. The Magistrate Judge filed an extensive Report recommending that the final decision of the Commissioner be vacated and remanded.

In relevant part, the Magistrate Judge stated as follows:

> Having reviewed the ALJ's report and the reasons he articulated in that report, the Court finds that the ALJ's analysis of Dr. Mingione's opinion is insufficient to permit a proper review of his findings under the substantial evidence standard. First, the ALJ failed to articulate the weight accorded to Dr. Mingione's opinion. . . . The report also does not record whether, in evaluating Dr. Mingione's opinion, the ALJ considered the factors as required by the regulations. As a result, this Court is ill-equipped to apply the substantial evidence test to the ALJ's decision to discount (or perhaps disregard) the opinion of Brown's treating physician. . . . While the ALJ did provide additional detail with regard to the opinion of Dr. Lee, the report did not adequately address the factors used to determine the "little weight" assigned to his opinion.

(R. & R. at 13–15.)

## II. ANALYSIS

### A. Standard of Review

On an appeal of the final decision of the Commissioner, the Court must uphold the Commissioner's decision if, based upon the entire administrative record, the decision is supported by substantial evidence. 42 U.S.C. § 405(g). See also Ridings v. Apel, 76 F. Supp. 2d 707, 708 (W.D. Va. 1999) (noting that the court "must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence"); Winford v. Chater,

917 F. Supp. 398, 400 (E.D. Va. 1996) (stating that "when a social security claimant appeals a final decision of the Commissioner, the district court must determine whether, based on the entire administrative record, the Commissioner's decision is supported by substantial evidence"). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589. Only if no reasonable mind could accept the record as adequate to support the determination will the denial of benefits be reversed. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The magistrate judge only makes a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Owens ex rel. Metcalf v. Barnhart, 444 F.Supp.2d 485, 488 (D.S.C. 2006) (citing Matthews v. Weber, 423 U.S. 261, 269 (1976). Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party objecting to a magistrate's report and recommendation may serve and file specific written objections to the proposed findings and recommendations. Upon the filing of

specific written objections to a Magistrate Judge's Report and Recommendation, the Court is required to review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1) (stating that "a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); see also Winford, 917 F. Supp. at 399-400 (noting that if a party files written objections to a magistrate judge's report and recommendation, the district court is required to make *de novo* determinations of the report to which the objection is made).

B.  **Discussion**

Defendant argues that the Magistrate Judge erred in finding that "the ALJ did not adequately explain the weight assigned to the medical opinions in the record." As noted above, the Magistrate Judge found that the ALJ did not adequately explain the weight assigned to Dr. Mingione's opinion. Defendant further argues that the Magistrate Judge erred in finding that the ALJ did not adequately address the factors used to determine the weight assigned to the opinions of Dr. Mingione and Dr. Lee. For the reasons set forth below, the Court rejects these arguments and accepts the Report and Recommendation of the Magistrate Judge.

The guidelines in 20 C.F.R. § 416.927(f)(2)(ii) state, in relevant part:

> Unless the treating source's opinion is given controlling weight, the administrative law judge *must explain in the decision the weight given to the opinions* of a State agency medical or psychological consultant or other program physician or psychologist, *as the administrative law judge must do for any opinions from treating sources*, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §416.927(f)(2)(ii) (emphasis added). The Fourth Circuit has held that an ALJ must "*explicitly* indicate[] the weight given to all of the relevant evidence." Gordon v. Schweiker,

10

725 F.2d 231, 235 (4th Cir. 1984). Failing to do so is reversible error, for the reviewing court is unable to determine if the ALJ's findings are supported by substantial evidence. See id.; see also Mitchell v. Comm'r of Soc. Security, No. 2:08cv513, No. 2:08cv513, at *10 (E.D. Va. Jan. 22, 2010).

The Magistrate Judge is correct that the ALJ did not explain in the decision the weight given to Dr. Mingione's opinion. Although it may be inferred that the ALJ did not give Dr. Mingione's opinion controlling weight, it is impossible to determine whether the ALJ gave Dr. Mingione's opinion some weight or rejected his opinion outright. Defendant argues that the ALJ gave Dr. Mingione's opinion less-than-controlling weight after following the procedures set forth in 20 C.F.R. §§404.1527(d)(2) and 416.927(d). But this argument rests on nothing more than an assumption that the ALJ followed proper legal procedure. A court "cannot simply presume the ALJ applied the correct legal standards, and . . . cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." Anderson v. Anderson, 319 Fed. App'x 712, at *3 (10th Cir. 2009) (unpub.) (internal quotations omitted).

Even if the Court were to find that the ALJ adequately explained the weight given to Dr. Mingione's opinion, the fact remains that the ALJ did not adequately address the factors used to assign this weight. Whenever an opinion is not given controlling weight, the ALJ must consider six specific factors set forth in 20 C.F.R. §404.1527(d)(2). Burch v. Apfel, 9 Fed. App'x 255, at *4 (4th Cir. 2001). These factors are as follows:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,

11

(4) the support of the physician's opinion afforded by the medical evidence of record,
(5) the consistency of the opinion with the record as a whole; and
(6) the specialization of the treating physician.

20 C.F.R. §404.1527(d)(2).

In discounting Dr. Mingione's opinion, the ALJ did not discuss Dr. Mingione's examining and treatment relationship to Plaintiff, nor did he discuss Dr. Mingione's specialization.[1] Instead, the ALJ focused exclusively on the lack of clinical or radiological support for Dr. Mingione's findings. This was error.

For similar reasons, the Court finds that the ALJ erred in failing to apply the §404.1527(d)(2) factors to Dr. Lee's opinion. The ALJ explicitly accorded Dr. Lee's opinion "little weight." In doing so, the ALJ focused exclusively on the fourth and fifth factors—the medical evidence of record and the consistency of the Dr. Lee's opinion with the record as a whole. Moreover, the ALJ disregarded certain contrary evidence—specifically, Plaintiff's back X-ray and prior surgery—without offering a reason for discounting this evidence. While the ALJ is entitled to weigh evidence in the first instance, the ALJ's opinion must address the relevant evidence and explain the weigh assigned thereto. See Smith v. Barnhart, 54 Fed. App'x 83, at *3 (3rd Cir. 2002) ("As we have explained on numerous occasions, we are unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection."). Accordingly, the ALJ erred in failing to adequately explain the weight assigned to Dr. Lee's opinion.

---

[1]Defendant points out that the ALJ did mention "Dr. Mingione's pain specialty, examining relationship, treatment relationship, supportability, and consistency" in setting forth the factual background for his analysis. Under the circumstances, the Court cannot find that the ALJ actually applied these factors when weighing Dr. Mingione's opinion.

12

The Court expresses no opinion on the appropriate weighing of the medical evidence on remand. Although the Court remands the case for further proceedings, the ALJ is free to reach the same substantive outcome on remand. In particular, the Court notes that the ALJ is entitled to give Dr. Mingione's opinion less than controlling weight. From prior experience, the Court has found that Dr. Mingione's medical opinions can be problematic. The Court remands this proceeding based on the lack of adequate explanation in the ALJ's decision, not based on a disagreement with the ALJ's conclusions.

## III. CONCLUSION

For the reasons set forth above, the Court hereby **ADOPTS** the findings in the Magistrate Judge's Report and **DENIES** the Defendant's Objections to the Report and Recommendation of the Magistrate Judge. Thus, the final decision of the Commissioner is hereby **VACATED** and **REMANDED** for further proceedings consistent with this Opinion and the Report and Recommendation.

The Clerk of the Court is **DIRECTED** to mail a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

June /4, 2010

Norfolk, Virginia

Robert G. Doumar
Senior United States District Judge